**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CITY OF SUNRISE GENERAL EMPLOYEES' RETIREMENT PLAN, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FLEETCOR TECHNOLOGIES, INC., RONALD F. CLARKE, and ERIC R. DEY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.
1:17-CV-02207-LMM

<u>CLASS ACTION</u>

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND**
<u>**APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**</u>

**KING & SPALDING LLP**
Michael R. Smith
Ga. Bar No. 661689
B. Warren Pope
Ga. Bar No. 583723
Bethany M. Rezek
Ga. Bar No. 553771
1180 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100
mrsmith@kslaw.com
wpope@kslaw.com
brezek@kslaw.com

*Counsel for Defendants*

**FILED PROVISIONALLY UNDER SEAL**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND FACTS ......................................................................................2

ARGUMENT ........................................................................................................4

I. PLAINTIFF CANNOT PROVE ADEQUACY OR TYPICALITY
   UNDER RULE 23(A) BECAUSE IT IS A PARTY IN NAME ONLY
   AND SUBJECT TO A UNIQUE RELIANCE DEFENSE.................................5

   A.   Plaintiff's Deposition Testimony Establishes That Plaintiff
        Does Not Control This Litigation...............................................................6

   B.   Plaintiff Lacks Adequacy And Typicality Because Neither It
        Nor Its Investment Manger Relied On The Integrity Of The
        Market In Purchasing FleetCor Stock. .......................................................9

II. PLAINTIFF CANNOT PROVE PREDOMINANCE UNDER RULE
    23(B)(3)...........................................................................................................14

   A.   Plaintiff Presents No Evidence That It Can Measure Classwide
        Damages Consistently With Its Theory Of Liability. ..............................15

   B.   Defendants' Expert Report Shows That Plaintiff Has Not
        Proposed A Methodology That Can Measure Classwide
        Damages Consistently With Its Theory of Recovery And That
        Individual Issues Predominate..................................................................18

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................15

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...............................................................................2, 10, 14

*Beach v. Healthways, Inc.*,
No. 3:08-cv-569, 2009 WL 3245393 (M.D. Tenn. Oct. 5, 2009) ......................14

*Bell v. Ascendant Solutions, Inc.*,
422 F.3d 307 (5th Cir. 2005) .............................................................................25

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ...............................................................................7

*In re BP P.L.C. Sec. Litig.*,
No. 10-MD-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ................17, 25

*Brown v. Electrolux Home Prods., Inc.*,
817 F.3d 1225 (11th Cir. 2016) ...........................................................................5

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)......................................................................................*passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)............................................................................................10

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014)........................................................................18

*Gross v. CFI Grp., Inc.*,
No. 14CV9438, 2017 WL 3668844 (S.D.N.Y. Aug. 23, 2017)........................24

*Gross v. CFI Grp., Inc.*,
310 F Supp. 3d 384 (S.D.N.Y. 2018) .................................................................24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)........................................................................................4, 10

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) ..................................................................................16

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) .......................................................................5, 6, 7

*In re Kosmos Energy Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014)......................................................................8, 9

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ..............................................................................9

*Loritz v. Exide Techs.*,
No. 2:13-cv-2607, 2015 WL 6790247 (C.D. Cal. July 21, 2015)..........15, 17, 19

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) ................................................................................15

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ......................................................................22, 23

*Miller v. Asensio & Co., Inc.*,
364 F.3d 223 (4th Cir. 2004) ..........................................................................21, 22

*Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)..............17, 18

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
725 F.3d 244 (D.C. Cir. 2013)..............................................................................18

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007)...................................................................6

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007).............................................................................14

*Sicav v. Wang*,
No. 12Civ-6682, 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ....................15, 18

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)..................................................................................10

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    No. 1:14-CV-20880-UU, 2016 WL 4006661 (S.D. Fla. Mar. 16,
    2016) .....................................................................................................25

*Villella v. Chem. & Mining Co. of Chile, Inc.*,
    No. 15 Civ. 2106, 2018 WL 2958361 (S.D.N.Y. June 13, 2018) ..........11, 12, 13

*In re Vivendi Univ., S.A. Sec. Litig.*,
    183 F. Supp. 3d 458 (S.D.N.Y. 2016) .......................................................11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................14

*Zandman v. Joseph*,
    102 F.R.D. 924 (N.D. Ind. 1984)..............................................................14

**Statutes**

15 U.S.C. § 78u-4..........................................................................................2

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................*passim*

## INTRODUCTION

Lead Plaintiff City of Sunrise General Employees' Retirement Plan's ("Plaintiff") Motion for Class Certification (Dkt. 68) (the "Motion") treats certification as a foregone conclusion in securities cases. That approach, however, is obsolete under more recent Supreme Court and Eleventh Circuit precedent demanding a "rigorous" analysis of the requirements of Federal Rule of Civil Procedure 23. Plaintiff bears the burden of proof at this stage, and an appropriately rigorous analysis will reveal that it fails to satisfy Rule 23.

First, Plaintiff cannot adequately represent the class as required by Rule 23(a) because it has abdicated control of this action to its counsel. Plaintiff offers only a conclusory declaration in support of its adequacy, which is insufficient. Moreover, the declaration is belied by Plaintiff's testimony demonstrating that it has ceded control of the litigation.

Second, Plaintiff cannot show adequacy and typicality under Rule 23(a) because it is subject to unique defenses concerning reliance. An outside money manager purchased the FleetCor Technologies, Inc. ("FleetCor" or the "Company") stock at issue by employing sophisticated investment strategies for Plaintiff that targeted mispriced or undervalued securities. Far from relying on the integrity of FleetCor's market price, Plaintiff's money manager, who had complete discretion

over Plaintiff's investment decisions, purchased FleetCor stock on Plaintiff's behalf because the manager believed the market had undervalued the stock. Given that Plaintiff therefore purchased shares "without relying on the integrity of the market," *Basic, Inc. v. Levinson*, 485 U.S. 224, 249 (1988), *Basic*'s "fraud-on-the-market" presumption will not be available, and Plaintiff will have to prove "eyeball" reliance on the alleged misrepresentations.

Finally, Plaintiff also fails to show predominance because it has not offered any model for calculating damages on a class-wide basis that is consistent with its theory of liability, as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Plaintiff instead offers only the general and vague musings of its expert that he can later calculate class-wide damages with an event study analysis. However, the theoretical, generic methodology proposed by Plaintiff's expert fails to provide any specific mechanism for disaggregating losses unrelated to the alleged fraud, among other things. For all of these reasons, Plaintiff's Motion should be denied.

## BACKGROUND FACTS

Plaintiff alleges securities fraud against the Company and certain of its officers. *See* Am. Class Action Compl. for Violation of the Fed. Sec. Laws (Dkt. 27) ("AC"). The Court appointed Plaintiff as the lead plaintiff under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(3) ("PSLRA"). Dkt. 25.

2

Bernstein Litowitz Berger & Grossmann LLP has served as lead counsel, and Bondurant Mixson & Elmore LLP has served as liaison counsel. *See id.*

Plaintiff claims that Defendants violated Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934, along with SEC Rule 10b-5. *See* AC ¶¶ 191–201. The allegedly fraudulent statements that remain in the case following the Court's May 15, 2017 Order on Defendants' Motion to Dismiss concern FleetCor's revenue growth. *See* Dkt. 40. Plaintiff alleges that these statements were false or misleading because FleetCor's revenue growth was allegedly "derived from usurious fees that destroyed customer relationships and were not sustainable in the long term." AC ¶ 147; *see also id.* ¶¶ 148–154. The Amended Complaint alleges that the fraud was revealed in a series of four corrective disclosures that ended on May 1, 2017, when one of FleetCor's partners, Chevron, filed a lawsuit against FleetCor. *See* AC ¶¶ 175–78. Plaintiff claims it was damaged when these alleged corrective disclosures caused FleetCor's stock price to decline. *Id.*[1]

Plaintiff now moves to certify a class of shareholders who purchased FleetCor common stock between February 5, 2016 and May 3, 2017. *See* Dkt. 68 at 1–2.

---

[1] Plaintiff's Amended Complaint referenced a fifth corrective disclosure, the December 19, 2016 announcement that Chevron was ending its relationship with FleetCor, but this Court held that this was not a corrective disclosure with respect to the challenged revenue statements. *See* Dkt. 40 at 32–33.

Plaintiff submits a declaration from its Chair (the "Smith Declaration"), Dkt. 68-4, an expert report by Chad Coffman (the "Coffman Report"), Dkt. 68-3, and a firm resume for lead counsel, Dkt. 68-5.  Defendants have taken discovery from Plaintiff and Mr. Coffman.  Defendants also submit an expert report from Professor René Stulz ("Stulz Report") (Ex. A), a declaration from Plaintiff's former investment advisor ("Gordon Decl.") (Ex. B), and a declaration from a former employee of the former investment advisor ("O'Keefe Decl.") (Ex. C).

## ARGUMENT

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast*, 569 U.S. at 33.  To warrant a departure from that rule, a putative class representative must "affirmatively demonstrate his compliance" with Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, and "satisfy through evidentiary proof" one of three Rule 23(b) categories.  *Id.*  These requirements are not mere formalities; nor are they simply rules of pleading: "[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23."  *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 573 U.S. 258, 275 (2014).

4

"[T]he presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). As such, the Supreme Court has emphasized that district courts have an independent obligation to perform a "rigorous analysis" to ensure that *all* of the Rule 23 requirements have been met, "an analysis [that] will frequently entail 'overlap with the merits of the plaintiffs' underlying claim.'" *Comcast*, 569 U.S. at 33–34 (citation omitted). If the Court is not satisfied that the requirements have been met, it should deny certification. Indeed, "the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'" *Brown*, 817 F.3d at 1233–34 (citation omitted). Here, Plaintiff has not carried its heavy burden of proving that each of Rule 23's requirements are satisfied.

## I.   PLAINTIFF CANNOT PROVE ADEQUACY OR TYPICALITY UNDER RULE 23(A) BECAUSE IT IS A PARTY IN NAME ONLY AND SUBJECT TO A UNIQUE RELIANCE DEFENSE.

Plaintiff bears the burden of proving that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is intended to address the due process concern that "all members of the class are bound by the res judicata effect of the judgment," even though they are not present to assert and defend their own interests. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726

(11th Cir. 1987). The primary indicator of adequacy, or the lack thereof, is "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Id.* Plaintiff cannot establish that it will prosecute this action with the requisite vigor because, to date, it has not played any role in conducting this case aside from signing the pleadings.

Plaintiff also bears the burden of proving that its claims "are typical of the claims" of the rest of the class. Fed. R. Civ. P. 23(a)(3). A plaintiff lacks typicality and adequacy where it is subject to unique defenses which have "the potential to become 'the focus of the litigation.'" *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007). Even an *arguable* unique defense will render a purported class representative atypical because "absent class members will be harmed if their representatives are preoccupied with their own, unique defenses." *Id.* Here, Plaintiff's claims are not typical of those of the class because it is subject to a unique defense as to a lack of reliance, which will subsume the other issues in this case.

### A.   Plaintiff's Deposition Testimony Establishes That Plaintiff Does Not Control This Litigation.

Plaintiff suggests that the lack of intra-class conflicts and the presence of competent counsel are the only requirements needed to establish its adequacy. *See* Dkt. 68-1 at 11. Rule 23(a)(4), however, does not allow a plaintiff to lend its name

6

to a class action that is controlled by its lawyers.  Potential class members are "entitled to 'more than blind reliance upon even competent counsel by uninterested and inexperienced representatives.'"  *Kirkpatrick*, 827 F.2d at 727 (citation omitted).  Thus, where a purported class representative's "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case," adequacy is lacking.  *Id.* at 728.[2]  Although Plaintiff's declaration states that it will adequately represent the interests of the class, those statements are belied by its deposition testimony that establishes it is merely a vehicle for Plaintiff's counsel to bring this case.

*First*, Plaintiff testified that it had neither investigated any potential claims against Defendants nor considered bringing any claims against Defendants until May 24, 2017, when Plaintiff's counsel pitched this lawsuit to Plaintiff.  Smith Dep. (excerpts attached as Ex. D) at 130:8–18, 139:1–20.  Indeed, Plaintiff only pursued this lawsuit at the suggestion of its counsel and had no intentions of doing so until courted by its counsel.  *Id.*  Plaintiff also testified that its counsel presented this litigation opportunity pursuant to a ██████████████████████████████

---

[2] Careful scrutiny is especially appropriate in a securities class action like this one, given the PSLRA's "emphatic command that competent plaintiffs, rather than lawyers, direct such cases."  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 484 (5th Cir. 2001).

██████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at 130:16–18,

140:13–141:11; *see* ████████████████ (Ex. E).  These arrangements have been

criticized by courts in the class action context, as explained below.

*Second*, and further evidencing how far Plaintiff is removed from the conduct

of this litigation, Plaintiff also testified that it was not even aware of the alleged

corrective disclosures until almost six months after they were published, when

Plaintiff read about them in its Amended Complaint.  Smith Dep. at 123:10–16.  But

most telling is Plaintiff's concession that it neither provides direction to, nor has any

control over, its counsel in conducting this case, *see id.* at 134:22–135:5, which runs

counter to Plaintiff's fiduciary duty to the class.

The Northern District of Texas addressed a similar fact pattern in *In re*

*Kosmos Energy Ltd. Securities Litigation*, refusing to certify the class because the

purported class representative was merely a vehicle for the plaintiff's counsel to

bring the case.  299 F.R.D. 133, 148–49 (N.D. Tex. 2014).  There, as here, the

plaintiff was unaware of its potential securities claims until a securities monitoring

firm urged it to pursue the lawsuit.  *Id.*  Also like this case, the plaintiff's counsel

pitched the lawsuit to the plaintiff pursuant to a free portfolio monitoring service.

*Id.*  As that court explained, these kinds of monitoring arrangements with repeat class

counsel "foster[] the very tendencies toward lawyer-driven litigation that the PSLRA was designed to curtail" because they "create[] a clear incentive for the securities monitoring law firm to discover 'fraud' in the investments it monitors and to recommend that the client, at no cost to itself, bring a class action lawsuit." *Id.* at 149 (citation omitted); *see also London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (a "stringent examination" of the plaintiff's adequacy is especially necessary where attorney's fees will vastly exceed the class representative's recovery). That questionable relationship, in conjunction with the plaintiff's ignorance of key matters in the case (akin to Plaintiff's pre-filing ignorance of the alleged corrective disclosures at the crux of its causation theory), led the *Kosmos* court to find that the relationship between the plaintiff and its counsel called the plaintiff's adequacy sufficiently into question to defeat class certification. *Id.*

> **B.      Plaintiff Lacks Adequacy And Typicality Because Neither It Nor Its Investment Manger Relied On The Integrity Of The Market In Purchasing FleetCor Stock.**

A class representative whose claims are subject to unique defenses cannot satisfy Rule 23(a)'s adequacy and typicality requirements. Here, Plaintiff's claims are subject to a unique reliance defense that will prevent Plaintiff from adequately representing the interests of the absent class members.

9

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).  Plaintiff seeks to establish reliance on a class-wide basis based on the so-called "fraud-on-the-market theory," which presumes that "an investor relies on public misstatements whenever he 'buys or sells stock at the price set by the market.'" *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 811 (2011) (quoting *Basic*, 485 U.S. at 247). But, as the Supreme Court has explained, "the presumption [is] just that, and [it] can be rebutted by appropriate evidence." *Id.*  To do so, Defendants may show that Plaintiff purchased FleetCor stock "without relying on the integrity of the market," *Basic*, 485 U.S. at 249, or "that [Plaintiff] would have bought . . . the stock even had [it] been aware that the stock's price was tainted by fraud," *Halliburton II*, 573 U.S. at 269.  Once that showing is made, Plaintiff will be required to prove that it directly relied on the alleged misrepresentations in order to recover damages under Section 10(b), vitiating the notion that its claims are typical of those of the class.

Discovery has revealed that Plaintiff is subject to a unique defense concerning reliance because its purchases of FleetCor stock did not depend on the integrity of the market price.  According to the declaration of Brown Advisory LLC ("Brown")—Plaintiff's investment manager—Brown "did not believe that the

10

market price for the purchased FleetCor stock had accounted for all publicly-available information and, thus did not rely on the integrity of the market price as an indicator of value." Gordon Decl. ¶ 18. Instead, it relied on its own proprietary research and analysis, as well as personal meetings and communications with members of FleetCor's management and investor relations personnel. *Id.* ¶ 16; *see also* O'Keefe Decl. ¶ 12.[3] As Plaintiff concedes, Brown exercised complete and total discretion to purchase and sell FleetCor stock on Plaintiff's behalf. Smith Dep. 39:19–22; *see also* Gordon Decl. ¶¶ 13–14. Accordingly, the knowledge and investment strategies of Brown are what matter when it comes to assessing reliance in this case. *See, e.g., Villella v. Chem. & Mining Co. of Chile, Inc.*, No. 15 Civ. 2106, 2018 WL 2958361, at **4–5 (S.D.N.Y. June 13, 2018) (collecting cases); *see also In re Vivendi Univ., S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 466–67 (S.D.N.Y. 2016) (no presumption where investment manager "pursued an investment strategy that relied on [its] own, carefully researched evaluation of [the issuer's] assets and liquidity" and "tapped into resources unavailable to the average investor").

Brown employed a "Large-Cap Growth Strategy" to manage Plaintiff's investments, which meant that Brown invested in companies "with strong business

---

[3] Mr. O'Keefe is a former employee of Brown that was involved in Brown's initial decision to invest in FleetCor stock. *See* O'Keefe Decl. ¶ 8.

11

models and capable management teams that had the potential to maintain attractive growth throughout a market cycle." Gordon Decl. ¶¶ 9–10. "In short, Brown Advisory looked for stocks they believed were undervalued by the market in light of their growth prospects," and, specifically, purchased FleetCor stock because it believed that "the market price for FleetCor stock at [that time] did not accurately represent the true value of that stock." *Id.* ¶¶ 12, 17; *see also* O'Keefe Decl. ¶¶ 7, 11–12. Quite apart from purchasing FleetCor stock based on its market price, Brown "did not believe that the market price for the purchased FleetCor stock had accounted for all publicly-available information and, thus, *did not rely on the integrity of the market* price as an indicator of value." Gordon Decl. ¶ 18 (emphasis added). In fact, Brown's investment strategy very likely would have led it to purchase FleetCor stock even if it had been aware that the market price of FleetCor stock had been compromised by the alleged misrepresentations about its fee practices. *See, e.g.*, *Villella*, 2018 WL 2958361, at *7.

After the alleged corrective disclosures were revealed to the market, Brown continued to believe that FleetCor stock was a valuable investment and that FleetCor was "███████████████████████," despite the information in the reports. ████████████████████ (Ex. F) at BALLC 0119. Even after all of the alleged truths were revealed to the market, Brown's research and analysis indicated that "█

██████████████████████████████████████████." *Id.* at BALLC0122. For

that reason, the lion's share of Brown's FleetCor purchases for Plaintiff during the

Class Period ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████. *See* ████████████

██████████████████████ (Ex. G) at BALLC0143; Smith Dep. 102:9 –103:1,

111:11–14; 112:11–25. Notably, Brown's investment thesis about FleetCor stock

did not change after the alleged corrective disclosures were released. *Compare* ████

██████████████████ at BALLC0111 (Ex. H) *with* ████████████████████

at BALLC0119 (Ex. F). Before the alleged corrective disclosures and after, Brown

believed that ████████████████████████████████████████████

██████████████████. In other words, Brown did not think the corrective

disclosures corrected any misunderstandings it had about FleetCor stock, meaning

that Brown's investment strategy rendered it "completely indifferent" to the alleged

fraud. *See Vivendi*, 185 F. Supp. 3d at 466.

Importantly, and independently, much of Brown's decision to invest in

FleetCor stock was based on direct, personal, and unique access it had to FleetCor

management, further undercutting reliance. *See Villella*, 2018 WL 2958361, at *7

(putative class representative's reliance on information unavailable to the public is

13

a circumstance that will defeat the *Basic* presumption of reliance). Brown had in-person meetings, telephone conversations, and email exchanges with FleetCor's senior management throughout the Class Period, which resources were unavailable to the average investor. Gordon Decl. ¶¶ 16, 19; *see also* O'Keefe Decl. ¶¶ 10,13. Plaintiff is atypical and inadequate given what its money manager learned at these meetings and how that information (rather than the integrity of the market price) guided its investment decisions. *See Beach v. Healthways, Inc.*, No. 3:08-cv-569, 2009 WL 3245393, at **4-5 (M.D. Tenn. Oct. 5, 2009) (holding that communications with insiders made a plaintiff atypical and inadequate); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 313–14 (E.D. Va. 2007) (same); *Zandman v. Joseph*, 102 F.R.D. 924, 931 & n.5 (N.D. Ind. 1984) (same).

## II.   PLAINTIFF CANNOT PROVE PREDOMINANCE UNDER RULE 23(B)(3).

Because it seeks certification of a Rule 23(b)(3) class, this Court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." The Court is required to "make findings about predominance . . . before allowing the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). The Court's inquiry under Rule 23(b)(3) is "even more demanding" than the already "rigorous" Rule 23(a) analysis. *See Comcast*, 569 U.S. at 34. Indeed, the Supreme Court has stated that district courts

14

should take a "close look" at the predominance requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Under *Comcast*, Plaintiff must come forward with a model for calculating damages on a class-wide basis that is consistent with its theory of liability. *See Comcast*, 569 U.S. at 34–35. As Justice Scalia explained in reversing class certification: "[A] model purporting to serve as evidence of damages in this class action must measure *only* those damages attributable to [the relevant liability] theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id*. at 35.[4]

A.      **Plaintiff Presents No Evidence That It Can Measure Classwide Damages Consistently With Its Theory Of Liability.**

Plaintiff relies on the Coffman Report to conclude "that class-wide damages are readily calculable based on the inflation in the price of FleetCor's stock caused by Defendants' alleged misstatements and omissions, which can be calculated based

---

[4] Although *Comcast* involved antitrust claims, the Supreme Court's reading of Rule 23(b)(3) was not limited to that field. 569 U.S. at 34 ("This case thus turns on the straightforward application of class-certification principles; it provides no occasion for the dissent's extended discussion . . . of substantive antitrust law."). Federal courts have thus applied *Comcast* in securities class actions. *See, e.g., Ludlow v. BP, P.L.C.*, 800 F.3d 674, 677 (5th Cir. 2015); *Loritz v. Exide Techs.*, No. 2:13-cv-2607, 2015 WL 6790247, at **22–23 (C.D. Cal. July 21, 2015); *Sicav v. Wang*, No. 12Civ-6682, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015).

on the price reaction to the disclosures revealing the alleged misstatements and omissions." Dkt. 68-1 at 23–24. Plaintiff cannot support this bald conclusion given Mr. Coffman has not even tried to calculate classwide damages, *see* Coffman Report ¶ 76; Dep. of Chad Coffman at 31:9–12, 132:9–10 (excerpts attached as Ex. I), much less provided specifics as to how he would do so for Plaintiff's case in particular. Because "[a] party's assurance to the court that it intends or plans to meet the requirements is insufficient," Plaintiff has not met its burden here. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008).

Mr. Coffman's proposed damages methodology is limited to two conclusory, boilerplate paragraphs tucked into the back of his Report. There, Mr. Coffman describes how an "event study" might, in theory, be used to calculate damages in a generic securities class action. *See* Coffman Report ¶ 76–77. As Mr. Coffman conceded, however, these paragraphs are *not* case-specific:

> Q. So how, if at all, is section 8 of your report different from similar sections of other expert reports that you've tendered in securities matters?
>
> A. It's really not. I mean the words aren't any different. . . . [T]he words here, you know, it's sort of a—the whole point is that the same methodology for damages general . . . out of pocket methodology for damages is the same from one case to the next in this area.

Coffman Dep. at 131:12–133:6; *see also* Stulz Report ¶ 40.

16

Pursuant to *Comcast*, the words "event study" have lost the magical power upon which Mr. Coffman seems to rely. As the *BP* Court explained in *rejecting* Mr. Coffman's similarly vague proposal in that case:

> Simply invoking the event study methodology may have . . . satisfie[d] the first half of *Comcast*'s test: that damages be measurable on a class-wide basis. But it does not satisfy the second half of that test. It does not assuage the Court that the class-wide damages methodology proposed will track Plaintiffs' theories of liability, as the Supreme Court expressly required in *Comcast* before a class may be certified.

*In re BP P.L.C. Sec. Litig.*, No. 10-MD-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013). Indeed, Plaintiff's obligation to articulate a model consistent with its theory of liability is particularly important in a case like this where Plaintiff alleges multiple corrective disclosures over multiple months amidst a multitude of confounding information. *See Loritz*, 2015 WL 6790247, at *22 (lack of model consistent with theory of liability "particularly problematic" given multiple alleged misrepresentations and other case-specific factors). As Professor Stulz opines, Mr. Coffman's "superficial approach does not provide a reliable basis for the conclusion that a class-wide methodology exists given the facts and circumstances of a particular case." Stulz Report ¶ 40.

Plaintiff's "trust me" approach is clearly deficient under *Comcast*. *See Ohio Pub. Emps.' Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08CV0160, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a

17

damages model that is vague, indefinite, and unspecific, or simply asserts . . . that there are unspecified 'tools' available to measure damages, the model amounts to 'no damages model at all,' and the class cannot be certified.") (citation omitted); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014) ("[W]ithout assurance beyond [expert's] say-so, the Court cannot conclude that there is a damages model that will permit the calculation of damages on a classwide basis."); *Sicav*, 2015 WL 268855, at *5 (similar); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253–54 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification. . . . It is not enough to submit a questionable model whose unsubstantiated claims cannot be refuted through *a priori* analysis.").  As a result, this Court should deny Plaintiff's Motion.

**B.**  **Defendants' Expert Report Shows That Plaintiff Has Not Proposed A Methodology That Can Measure Classwide Damages Consistently With Its Theory of Recovery And That Individual Issues Predominate.**

Plaintiff's reliance on two conclusory paragraphs for its damages analysis prevents Defendants from offering a full-throated rebuttal to Mr. Coffman's damages model at this stage.  As Mr. Coffman hedged in his deposition:

> I think it's fair to say that while the event study I have already performed would be a starting point of what to look at, there could be additional event study analysis that's necessary beyond what I have

18

already done, both in terms of looking at alternative event windows, at looking at specific dates, specific, you know, what the mix of information was over time.

Coffman Dep. at 162:9–20; *see also* Stulz Report ¶ 41 & n.83.  In essence, Mr. Coffman seeks to have the best of both worlds:  a model that he does not yet need to stand behind for purposes of the damages analysis (perhaps in order to save his response for a future rebuttal report, *cf. Loritz*, 2013 WL 6790247, at *22), but one which vaguely hints to at least some statistically significant price movement on all of Plaintiff's alleged corrective disclosure dates.[5]

---

[5] Mr. Coffman's "have your cake and eat it too" approach is evident from his deposition, where he noted that even though "there's a much more detailed analysis that would have to take place" for him to stand behind a damages model for this case, one could still look at his existing event study to see "as a first order matter whether there was a statistically significant movement in the stock price on the day any particular [Citron] report was filed."  Coffman Dep. at 148:24–149:10. Similarly, Mr. Coffman repeatedly assured that his market efficiency study relied solely on the Amended Complaint's allegations to select corrective disclosure dates, yet he selected April 28th as an additional corrective disclosure—a date not alleged to be a corrective disclosure in the Amended Complaint, but conveniently associated with a price decline in Mr. Coffman's model. *Compare Id.* at 112:14–17 ("Q.  And where did you get the alleged correct[ive] disclosures, from the complaint? A.  From the complaint, yes."); *Id.* at 121:7–12 (similar), *with* Coffman Dep. Exhibit 34 (Ex. J); Coffman Dep. at 255:8–20 ("Q.  So assuming the complaint does not mention April 28th as a corrective disclosure date, why do you believe that you listed it as a corrective disclosure date in Defendants' Exhibit 34?  A.  That's something I—I would actually before I give an answer I would want to go back and—that's something I would want to go back and—and think about and discuss with my staff if—what the reasoning was there.").

19

Even if *Comcast* did not require more from Plaintiff at this stage (it does), it is clear even from Mr. Coffman's existing proposal that Plaintiff has not articulated a damages model that is consistent with its theory of liability. As explained in detail by Professor Stulz, Mr. Coffman's proposed methodology "would result in windfall gains for Plaintiff," and cannot be applied on a classwide basis consistent with Plaintiff's theory of liability. Stulz Report ¶ 41.

First, Mr. Coffman's existing methodology is inconsistent with Plaintiff's theory that the March 1, 2017 Capitol Forum report was a partial corrective disclosure, mitigated by Defendants "further false statements." *See* AC ¶ 103; Stulz Report ¶¶ 42–48. If Plaintiff's theory is taken as given, "FleetCor's stock price should have increased when those additional false statements became public." *Id.* at ¶ 43. However, Mr. Coffman's model "indicates that FleetCor stock had no positive statistically significant residual returns between March 2 and March 30, 2017." *Id.* at ¶ 45. Therefore, Mr. Coffman's methodology is inconsistent with Plaintiff's allegation that the March 1, 2017 Capitol Forum report did not fully correct any existing inflation in FleetCor's stock price due to "further false statements" by FleetCor. *Id.* at ¶ 48.

Second, Mr. Coffman's methodology fails to consider that subsequent alleged corrective disclosures reflected realizations of the "headline risk" described in the

20

March 1, 2017 Capitol Forum report. *Id.* at ¶ 49. As Professor Stulz explains, the alleged corrective disclosures following the March 1, 2017 Capitol Forum report reflected realizations of the known risk described in the report that the company was "particularly vulnerable to . . . negative headlines." *Id.* In an efficient market, known risk is "fully incorporate[d] into the stock price[.]" *Id.* Moreover, even assuming the Court ultimately concluded there were additional disclosures following the March 1, 2017 Capitol Forum report that further corrected prior misstatements or omissions, Mr. Coffman's proposed methodology (or lack thereof) does not indicate how it would reliably "disentangle the impact of such realizations of a known risk from the impact of any disclosures that allegedly corrected Defendants' prior misstatements or material omissions." *Id.* at ¶ 51.

Third, Mr. Coffman has not attempted to explain, as he must, whether and how it is possible to separate the portion of the Company's stock price decline that is supposedly attributable to the alleged corrective disclosures from the other non-actionable disclosures that occurred at the same time. *See* Coffman Report ¶¶ 76–77. Mr. Coffman proposes a calculation of damages based on the so-called "out of pocket" method, Coffman Report ¶ 76, but the "out-of-pocket damages sought by the plaintiff must be directly tied to the actual amount caused by the alleged fraud that is the subject matter of [the] suit." *See Miller v. Asensio & Co., Inc.*, 364 F.3d

21

223, 232 (4th Cir. 2004) ("[R]ecovering out-of-pocket damages based on the market price of a security . . . requires elimination of that portion of the price decline that is the result of forces unrelated to the wrong."). Indeed, as detailed in the Stulz Report, any proposed damages methodology would have to disentangle the effects of other confounding information in order to measure damages reliably on a class-wide basis. Stulz Report at ¶ 52.

For instance, Mr. Coffman fails to explain how his damages methodology would disentangle stock price reaction due to opinion from that due to fact. *Id.* at ¶¶ 56–76. It is tautological that a statement of pure *opinion* cannot correct any alleged *factual* misrepresentations or omissions. *See Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) ("[I]f the information relied upon in forming an opinion was previously known to the market, the only thing actually disclosed to the market when the opinion is released is the opinion itself, and such an opinion, standing alone, cannot 'reveal[ ] to the market the falsity' of a company's prior factual representations.") (citation omitted). In *Meyer,* for instance, the Eleventh Circuit held that a presentation given by a "prominent short-sale hedge fund investor" suggesting a Company's assets were "overvalued" did not constitute a corrective disclosure because "the mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure."

*See id.* Here, as described in detail in the Stulz Report, the Capitol Forum and Citron reports alleged by Plaintiff to be corrective disclosures are chock full of opinions about FleetCor based on alleged factual information available to the public long before the reports were issued. *See* Stulz Report at ¶¶ 56–76. Not only would an estimate of inflation based on the overall abnormal stock price decline on the alleged disclosure dates be unreliable, but it would result in windfall gains for Plaintiff in light of the failure to disaggregate the numerous opinions contained in the reports.[6] *See id.*

Similarly, Mr. Coffman fails to articulate how his proposed methodology would reliably disentangle stock price reaction due to other confounding news released the same day as the alleged corrective disclosure. *Id.* at ¶¶ 77–91. For example, Plaintiff alleges that the May 1, 2017 Chevron Petition constituted a corrective disclosure that negatively affected FleetCor's stock price on May 2, 2017 and May 3, 2017. AC ¶ 121. Yet, Mr. Coffman has not shown there is any scientific and reliable methodology to disentangle the stock price effects of alleged corrective disclosures contained in the May 1, 2017 Chevron Petition from the *multitude* of

---

[6] Despite Mr. Coffman's assurances that he would be able to employ a method of calculating damages on a classwide basis consistent with Plaintiff's theory of liability, he acknowledged that he did not recall whether he has had to disentangle opinions versus facts in his other cases. *See* Coffman Dep. at 244:14–19.

confounding information surrounding that event—including, for instance, FleetCor earnings and acquisition announcements, negative analyst opinions, and allegations in the Chevron Petition unrelated FleetCor's fee practices.[7]  *See* Stulz Report at ¶¶ 82–91.

The importance of articulating a means for disentangling confounding information *at this stage* is apparent from prior cases involving Mr. Coffman.  In *Gross v. CFI Group*, defendants did not challenge predominance at class certification, No. 14CV9438, 2017 WL 3668844 (S.D.N.Y. Aug. 23, 2017), and it was not until summary judgment that the court finally determined that Mr. Coffman's analysis failed to provide a method for disentangling confounding information from alleged corrective information, 310 F. Supp. 3d 384, 398 (S.D.N.Y. 2018) ("Coffman does not attempt to attribute any portion of the increase in GFI's share price to a corrective disclosure as opposed to other simultaneously released information.").  As *Gross* suggests (and *Comcast* requires), Mr. Coffman

---

[7] Despite Mr. Coffman's assurance that there is a method to calculate damages on a classwide basis consistent with Plaintiff's theory of liability, he acknowledged that he did not recall whether he has had to disentangle portions of lawsuits not related to the allege fraud in his other cases. *See* Coffman Dep. at 264:7–266:2.

24

must articulate *now* how his proposed damages methodology would account for confounding information.[8]

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion, and Plaintiff should not be permitted to try again. *See, e.g., Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 316 (5th Cir. 2005) ("Nor are we persuaded that we should require that [the plaintiffs] get a second bite at the class certification apple; inadequate briefing on an issue critical to class certification for which a party bears the burden of proof is no basis for us to order a repêchage round."). Instead, the Court should "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]" Fed. R. Civ. P. 23(d)(1)(D).

---

[8] Plaintiff cites *Thorpe*, where Defendants argued "confounding information will be difficult to desegregate from the impact of the alleged corrective disclosure," and the district court held "Plaintiffs are not required to prove loss causation at the class certification stage[.]" *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661, at *16 (S.D. Fla. Mar. 16, 2016). But here, Mr. Coffman has not even articulated how he would disaggregate confounding information, instead content to ask the Court to take him at his word that he will eventually be able to do so. Not only is that a suspect assertion, but it is not sufficient under the mandate of *Comcast*. *See In re BP*, 2013 WL 6388408, at *17.

Respectfully submitted this 4th day of April, 2019.

/s/ Michael R. Smith
Michael R. Smith
Ga. Bar No. 661689
B. Warren Pope
Ga. Bar No. 583723
Bethany M. Rezek
Ga. Bar No. 553771
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100
mrsmith@kslaw.com
wpope@kslaw.com
brezek@kslaw.com

*Counsel for Defendants*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).

/s/ *Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2019, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record as well as by electronic mail as follows:

Salvatore J. Graziano, salvatore@blbglaw.com
Katherine M. Sinderson, katiem@blbglaw.com
Scott R. Foglietta, scott.foglietta@blbglaw.com
Julia K. Tebor, julia.tebor@blbglaw.com
Avi Josefson, avi@blbglaw.com
Lauren A. Ormsbee, lauren.ormsbee@blbglaw.com
H. Lamar Mixson, mixson@bmelaw.com
Amanda Seals Bersinger, bersinger@bmelaw.com

*/s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689