**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CITY OF SUNRISE GENERAL EMPLOYEES' RETIREMENT PLAN, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLEETCOR TECHNOLOGIES, INC., RONALD F. CLARKE, and ERIC R. DEY,<br><br>Defendants. | Civ. A. No. 1:17-cv-02207-LMM<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
<u>AND APPROVAL OF NOTICE TO THE CLASS</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.   PRELIMINARY STATEMENT ..................................................................1

II.  HISTORY OF THE LITIGATION ..............................................................4

III. THE TERMS OF THE SETTLEMENT .......................................................7

IV.  ARGUMENT...............................................................................................8

    A.   THE PROPOSED SETTLEMENT WARRANTS
    PRELIMINARY APPROVAL ............................................................8

        1.   The Settlement Is The Result Of Good Faith,
        Arm's- Length Negotiations By Well-Informed
        And Experienced Counsel.........................................................10

        2.   The Substantial Benefits For The Class, Weighted
        Against Litigation Risks, Support Preliminary
        Approval...................................................................................13

    B.   THE PROPOSED FORM AND METHOD OF NOTICE
    ARE APPROPRIATE AND SHOULD BE APPROVED.................17

    C.   THE COURT SHOULD ADOPT THE PROPOSED
    SCHEDULE .....................................................................................22

V.   CONCLUSION...........................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnone v. Camden Cnty., Ga.*,
2018 WL 4937061 (S.D. Ga. Oct. 10, 2018) ........................................ 11

*Agnone v. Camden Cnty., Ga.*,
2019 WL 1368634 (S.D. Ga. Mar. 26, 2019) ...................................... 10

*Almanzar v. Select Portfolio Servicing, Inc.*,
2015 WL 10857401 (S.D. Fla. Oct. 15, 2015) .................................... 10

*Aranaz v. Catalyst Pharm. Partners Inc.*,
2014 WL 11870214 (S.D. Fla. Dec. 3, 2014) ...................................... 21

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...................................... 16

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) .................................... 13

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) ........................................................ 12

*Cook v. Palmer, Reifler & Assocs.*,
2019 WL 3383634 (M.D. Fla. May 17, 2019) ...................................... 9

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ........................................................ 11

*Fresco v. Auto Data Direct, Inc.*,
2007 WL 2330895 (S.D. Fla. May 14, 2007) ...................................... 21

*Gunthert v. Bankers Standard Ins. Co.*,
2019 WL 1103408 (M.D. Ga. Mar. 8, 2019) ...................................... 10

*Gutter v. E.I. Dupont De Nemours & Co.*,
2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) .................... 14

*In re HealthSouth Corp. Sec. Litig.*,
   572 F.3d 854 (11th Cir. 2009) ...............................................................8

*Lunsford v. Woodforest Nat'l Bank*,
   2014 WL 12740375 (N.D. Ga. May 19, 2014)...................................11

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) ......................................................8

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................13

*Robbins v. Koger Props. Inc.*,
   116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied*, 129 F.3d
   617 (11th Cir. 1997)..........................................................................16

*Smith v. Wm. Wrigley Jr. Co.*,
   2010 WL 2401149 (S.D. Fla. June 15, 2010)...................................10

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...........................................................................19

**Other Authorities**

Fed. R. Civ. P. 23(e)(1)...............................................................................9

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................9, 18

Fed. R. Civ. P. 23(e)(2)...............................................................................9

Lead Plaintiff City of Sunrise General Employees' Retirement Plan ("Sunrise General" or "Lead Plaintiff"), on behalf of itself and the other members of the certified Class,[1] respectfully submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed settlement (the "Motion") reached in the above-captioned litigation (the "Settlement").[2]

# I.   <u>PRELIMINARY STATEMENT</u>

Lead Plaintiff has reached an agreement to settle this Action in exchange for a cash payment of $50,000,000 for the benefit of the Class.  If approved, the Settlement will resolve this Action in its entirety and will bring to a close more than two years of hard-fought litigation, which included substantial motion practice, certification of a litigation class, significant discovery, and extensive arm's-length

---

[1] "Class" means the class certified in the Court's July 17, 2019 Order (ECF No. 93). Specifically, the Class includes all persons who purchased or otherwise acquired publicly traded FleetCor common stock during the Class Period, and who were damaged thereby.  Excluded from the Class are (i) Defendants; (ii) any current or former Officers or directors of FleetCor; (iii) the Immediate Family Members of any Defendant or any current or former Officer or director of FleetCor; and (iv) any entity that any Defendant owns or controls, or owned or controlled during the Class Period.  Also excluded from the Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

[2] All capitalized terms used in this Memorandum that are not otherwise defined shall have the meanings given to them in the Stipulation and Agreement of Settlement, dated November 6, 2019 (the "Stipulation"), which is attached as Exhibit 2 to the Motion.

negotiations between counsel, including a full-day mediation session.  By its Motion, Lead Plaintiff seeks entry of an Order: (i) granting preliminary approval of the Settlement; (ii) approving the form and manner of providing notice of the Settlement to the Class; and (iii) scheduling a hearing date for final approval of the Settlement (the "Settlement Hearing") and related events (the "Preliminary Approval Order").

Lead Plaintiff believes that the proposed Settlement, which is the result of robust arm's-length negotiations between counsel overseen by a well-respected mediator, represents a very favorable result for the Class because it provides a significant recovery, particularly when compared to the risks that continued litigation might result in a smaller recovery, or no recovery at all.  While Lead Plaintiff and Lead Counsel believe the claims asserted against Defendants have merit, Lead Plaintiff would have faced substantial challenges in establishing liability and damages and recovering on any substantial judgment.  For example, Lead Plaintiff faced substantial challenges in proving that Defendants' statements about FleetCor's organic revenue growth were false and misleading when made, as well as showing that FleetCor's predatory fee practices (versus any non-predatory fees) generated a material amount of the Company's organic revenue growth.  Lead Plaintiff would have also faced significant challenges in proving that Defendants

made the alleged false statements with the requisite scienter and in establishing loss causation.

Prior to entering into the Stipulation, Lead Plaintiff and Lead Counsel: (i) investigated and prepared two complaints, including the initial complaint filed and the operative Amended Class Action Complaint (the "Complaint"); (ii) defeated in part Defendants' motion to dismiss the Complaint; (iii) engaged in significant fact and expert discovery, which included obtaining and reviewing more than 314,000 pages of documents by Defendants and third parties; (iv) successfully moved for class certification; and (v) engaged in extensive settlement negotiations, which included participation in a full-day mediation session, under the auspices of an experienced and highly respected mediator, Jed. D. Melnick.  Accordingly, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims in the Action at the time of the Settlement, which informed Lead Plaintiff's determination that the Settlement is fair, reasonable, and adequate.

At the Settlement Hearing, the Court will have before it more extensive papers in support of the Settlement, and it will be asked to determine whether the Settlement is fair, reasonable, and adequate.  At present, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Specifically, Lead Plaintiff requests that this Court enter the Parties'

agreed-upon proposed Preliminary Approval Order (attached as Exhibit A to the Stipulation and submitted herewith), which will, among other things: (i) grant preliminary approval of the Settlement; (ii) approve the form and manner of providing notice of the Settlement to the Class, including the form and content of the Settlement Notice, Claim Form, and Summary Settlement Notice; and (iii) schedule the Settlement Hearing and related events.

As discussed below, the Settlement is fair, reasonable, and adequate, and thus warrants the Court's preliminary approval.

## II.   HISTORY OF THE LITIGATION

This securities fraud class action was commenced when Sunrise General filed an initial complaint on June 14, 2017. ECF No. 1. In an Order dated August 25, 2017, the Court appointed Sunrise General as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and approved its selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel. ECF No. 25.

On October 13, 2017, Lead Plaintiff filed the Complaint. ECF No. 27. The Complaint asserts claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, and against the Executive Defendants under Section 20(a) of the Exchange Act. The Complaint

alleges, among other things, that Defendants made materially false and misleading statements during the Class Period regarding FleetCor's revenue growth. The Complaint further alleged that the price of FleetCor's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and that the price declined when the truth was revealed.

On November 27, 2017, Defendants moved to dismiss the Complaint. ECF No. 30. Lead Plaintiff opposed the motion, and after full briefing and oral argument, the Court issued an order denying in part and granting in part Defendants' motion to dismiss the Complaint on May 15, 2018. ECF No. 40. Specifically, the Court sustained Lead Plaintiff's claims regarding Defendants' allegedly false and misleading statements regarding FleetCor's revenue growth. On June 8, 2018, Defendants moved the Court to reconsider the scienter portion of the Court's May 15, 2018 motion to dismiss Order. ECF No. 42. On August 21, 2018, after full briefing and oral argument, the Court denied Defendants' motion for reconsideration. ECF No. 49.

The Parties commenced fact discovery in October 2018, and prepared and served initial disclosures on October 10, 2018. Lead Plaintiff prepared and served requests for production of documents for Defendants and served document subpoenas on 10 third parties. In response, Defendants and third parties produced

over 314,000 pages of documents to Lead Plaintiff.  Lead Plaintiff produced over 1,300 pages of documents to Defendants in response to their requests.  In connection with Lead Plaintiff's motion for class certification, Defendants deposed a representative of Lead Plaintiff, as well as Lead Plaintiff's market-efficiency expert, Chad Coffman.  The Parties also served and responded to interrogatories and exchanged numerous letters, including disputes between the Parties and with nonparties, concerning discovery issues.

On January 4, 2019, Lead Plaintiff filed its motion for class certification, which was accompanied by a report from Mr. Coffman.  ECF No. 68.  On April 4, 2019, Defendants opposed Lead Plaintiff's class-certification motion.  ECF Nos. 79-80.  On May 6, 2019, Lead Plaintiff filed a reply in further support of its motion for class certification.  ECF Nos. 85-86.  On July 17, 2019, the Court issued an Order granting the class-certification motion, certifying the Class as defined in Lead Plaintiff's motion, appointing City of Sunrise General Employees' Retirement Plan as the Class Representative, and appointing BLB&G as Class Counsel for the certified Class.  ECF No. 93.

While discovery was significantly under way, the Parties discussed the possibility of resolving the Action through settlement and agreed to mediation before Jed D. Melnick, Esq. of JAMS.  On July 30, 2019, the Parties filed a joint request to

stay the deadlines set forth in the Court's Scheduling Order until the conclusion of the Parties' scheduled mediation.  The Court granted the joint consent motion on August 6, 2019.  On August 30, 2019, the Parties exchanged detailed mediation statements, with numerous exhibits, addressing liability and damages issues, and exchanged reply papers in further support of their mediation statements on September 9, 2019.  On September 16, 2019, the Parties participated in a full-day in-person mediation session with Mr. Melnick and engaged in vigorous settlement negotiations with the assistance of Mr. Melnick but were not able to reach an agreement.  The Parties continued their settlement negotiations after the mediation under the auspices of Mr. Melnick, and, on September 27, 2019, the Parties reached an agreement in principle to settle the Action.  Thereafter, the Parties worked diligently to negotiate the full settlement terms, which are set forth in the Stipulation.

## III.   THE TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve the Action in its entirety, provides that Defendants will pay or cause to be paid $50,000,000 in cash into an escrow account for the benefit of the Class.  The full terms and conditions of the Settlement are set forth in the Stipulation, which is attached to the Motion as Exhibit 2.  In addition, the Parties have entered into a confidential Supplemental Agreement that sets forth the conditions under which Defendants may terminate the

Settlement if the number of persons or entities who request exclusion from Class reaches a certain threshold. This agreement, often called a "blow provision," is a standard feature of securities class action settlements. The terms of such agreements are generally maintained as confidential in order to prevent potential opt-outs from threatening to trigger the blow provision and leveraging that threat to obtain additional payment from the settling parties.[3]

## IV.   ARGUMENT

### A.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts have long recognized a strong policy and presumption in favor of class action settlements. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Moreover, this policy consideration applies especially to securities fraud class actions. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("securities fraud class actions readily lend themselves to settlement"). A district court's review of a proposed class action settlement is a two-step process.

---

[3] If the Court would like to review the Supplemental Agreement, Lead Plaintiff requests that the Parties be permitted to submit it to the Court under seal for *in camera* review. *See* Stipulation ¶ 38.

First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1).  Second, after notice has been provided and a hearing has been held, the Court determines whether to approve the settlement on a finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice to the class upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2).  *See* Fed. R. Civ. P. 23(e)(1)(B); *see also Cook v. Palmer, Reifler & Assocs.*, 2019 WL 3383634, at *3 (M.D. Fla. May 17, 2019) ("Notice of the proposed settlement must be provided to all class members who would be bound by the proposal if it is shown that the court will likely be able to [ ] approve the proposal as fair, reasonable, and adequate…") (internal quotation marks and citations omitted).

This standard for preliminary approval of class action settlements was newly established by amendments to Rule 23(e) that became effective on December 1, 2018.  Prior to those amendments, Courts had developed a standard for preliminary approval through case law that was substantively similar to the current standard but phrased differently.   A common formulation was that the court should grant preliminary approval to a proposed settlement "if it is within range of possible approval or, in other words, [if] there is probable cause to notify the class of the

proposed settlement." *See, e.g.*, *Agnone v. Camden Cnty., Ga.*, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (citing *Horton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)).  Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citation omitted).

As shown below, preliminary approval should be granted because the proposed Settlement is the result of robust arm's-length negotiations, has no obvious deficiencies and the Court will be able to approve the Settlement as fair, reasonable, and adequate at final approval.

### 1. The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See Gunthert v. Bankers Standard Ins. Co.*, 2019 WL 1103408, at *3 (M.D. Ga. Mar. 8, 2019) ("'There is a presumption of good faith in the negotiation process …. [and] [w]here the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion'") (citation omitted); *see also Almanzar v. Select Portfolio*

10

*Servicing, Inc.*, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.").

In assessing whether to approve a proposed class action settlement, courts give considerable weight to the opinion of well-informed and experienced counsel. *See Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) ("The Court should give 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, the Settlement was achieved only after more than two years of hard-fought litigation, including the resolution of Defendant's motion to dismiss and Lead Plaintiff's motion for class certification, conducting significant discovery, and robust arm's-length negotiations by well-informed and experienced counsel, including the active participation of the Court-appointed Lead Plaintiff and with the assistance of an experienced mediator. These facts strongly support the conclusion

that the Settlement is fair. *See Agnone v. Camden Cnty., Ga.*, 2018 WL 4937061, at *5 (S.D. Ga. Oct. 10, 2018) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arm's length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

As part of the mediation session, Lead Counsel and Defendants' counsel prepared and presented submissions addressing, among other things, their respective views regarding the merits of the litigation, including liability and damages issues. In addition, prior to reaching the agreement to settle the Action, Lead Plaintiff had conducted an extensive investigation; prepared a detailed Complaint; briefed, argued and defeated in part Defendants' motion to dismiss the Complaint; obtained class certification; obtained and reviewed more than 314,000 pages of documents from Defendants and third parties; and worked with experts on market efficiency and damages. As a result, Lead Plaintiff and Lead Counsel were well-informed and had an adequate basis for assessing the strengths of the Class's claims and Defendants' defenses when they entered into the Settlement.

Moreover, in determining the good faith of this settlement proposal, the Court should consider the judgment of Lead Counsel. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) ("[a] district court properly considers the judgment of experienced counsel when asked to approve a class action settlement."). Lead Counsel, BLB&G, is one of the nation's leading class action litigation firms. Accordingly, its judgment that this Settlement is in the best interests of the Class should be given considerable weight.

In sum, the fact that the Settlement is the product of arm's-length settlement negotiations conducted with the assistance of an experienced mediator, has been approved by the Court-appointed Lead Plaintiff, and was entered into by informed and experienced counsel, demonstrates the procedural fairness of the process by which the Settlement was reached.

### 2. The Substantial Benefits For The Class, Weighted Against Litigation Risks, Support Preliminary Approval of the Settlement

The Settlement provides for a cash payment of $50 million for the benefit of the Class. The Settlement is an excellent result for Class Members, especially in light of the significant risks of continued litigation. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) ("Courts have repeatedly noted that [s]tockholder litigation is notably difficult and

13

notoriously uncertain.") (quotation marks and citations omitted); *see also Gutter v. E.I. Dupont De Nemours & Co*., 2003 U.S. Dist. LEXIS 27238, at \*5 (S.D. Fla. May 30, 2003) ("[T]he risks associated with proceeding to trial in . . . complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement.").

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the expense and length of litigation through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.

First, Lead Plaintiff faced significant risks that, at either the summary-judgment stage or after a trial, that it would not be to establish one of required elements of falsity, materiality, scienter, and/or loss causation to sustain its securities fraud claims. Lead Plaintiff would have faced substantial challenges in proving that Defendants' statements about FleetCor's organic revenue growth were false and misleading when made. For example, Defendants would have continued to vigorously argue that their statements about FleetCor's organic revenue growth were accurate and that they had no duty to disclose the source of revenue growth or the unsustainability of their alleged predatory fee practices. Moreover, Defendants would have challenged Lead Plaintiff on the issue of materiality and argued that

Lead Plaintiff could not prove that FleetCor's predatory fee practices (versus any non-predatory fees) generated a material amount of FleetCor's organic revenue growth.  Second, Lead Plaintiff would have also faced challenges in proving that Defendants made the alleged false statements with the intent to mislead investors or were reckless in making the statements.  For example, Defendants would contend that the Executive Defendants were not aware of the alleged predatory fee practices and that, even if they were, they thought those practices were lawful and consistent with the terms governing FleetCor's relationship with its customers.

Even if Lead Plaintiff established liability, it would have faced significant hurdles in proving loss causation—that the alleged misstatements were the cause of investors' losses—and in proving damages.  For example, Defendants would likely argue that the alleged corrective disclosures on April 4, 2017 and April 27, 2017, in the form of reports discussing FleetCor's fee practices, could not have caused the decline in FleetCor's stock price because they did not disclose anything new to the market that had not already been previously disclosed in a report issued on March 1, 2017.  Additionally, Defendants would have argued that Lead Plaintiff would not be able to disentangle the effect of any information unrelated to the alleged fraud which the market learned around the same time as the alleged corrective disclosures.  If

Defendants prevailed on their loss-causation arguments, recoverable damages would have declined significantly or been eliminated.

On all of these issues, Lead Plaintiff would have to prevail at several stages—on a motion for summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow—which could take years. *See, e.g., Robbins v. Koger Props. Inc*., 116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig*., 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment as a matter of law in favor of defendants). The Settlement avoids these risks and will provide a prompt and certain benefit to the Class rather than the mere possibility of a recovery after additional years of litigation and appeals.

The Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all Parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Lead Plaintiff respectfully submits that, considering the risks of continued litigation and the time and expense which would be incurred to prosecute the Action through a trial, the $50 million Settlement represents a meaningful recovery that is in the best interests of the Class.

The Settlement is also reasonable when considered in relation to the range of potential recoveries that might be recovered if Lead Plaintiff prevailed at trial, which was far from certain for the reasons noted above. The maximum potential damages that could be realistically established at trial ranged from $114.8 million to $584.8 million, depending on the outcome of loss causation and damages arguments. Accordingly, the $50 million Settlement represents from 8.5% to 44% of the realistic maximum recoverable damages for the Class. This is an extremely positive result for Class Members given the risks of the litigation.

Accordingly, for all the foregoing reasons, Lead Plaintiff respectfully requests that the Court take the first step in the approval process and grant preliminary approval.

### B. THE PROPOSED FORM AND METHOD OF NOTICE ARE APPROPRIATE AND SHOULD BE APPROVED

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the Preliminary Approval Order, as well as the method for providing notice. As outlined in the agreed-upon proposed Preliminary Approval Order, Lead Counsel will cause the Claims Administrator to notify Class Members of the Settlement by mailing the Notice and Claim Form to all Class Members who can be identified with reasonable effort.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1)(B) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The proposed notice plan set forth above readily meets these standards and is typical of notice plans in similar actions.

The proposed Notice describes the proposed Settlement, and sets forth, among other things: the nature of the Action; the definition of the certified Class; the claims and issues in the Action; what has occurred in the case to the present time; the claims that will be released; and the proposed Plan of Allocation for the proceeds of the Settlement. The Notice also advises that a Class Member may enter an appearance through counsel if desired; describes the effect of the Settlement on Class Members; states the procedures and deadlines for Class Members to request exclusion from the Class or object to the proposed Settlement, the proposed Plan of Allocation, and/or the requested attorneys' fees and expenses; states the procedures and deadline for submitting a Claim Form to recover from the Settlement; and provides the date, time, and location of the final Settlement Hearing. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published once in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. Lead

18

Counsel will also cause a copy of the Notice and Claim Form to be readily available on the Settlement website created specifically for this Action.

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable in the event that Lead Plaintiff prevailed, and stating the issues on which the Parties disagree; (iii) the name, telephone number, and address of Lead Counsel who will be available to answer questions concerning any matter contained in the Notice; (iv) the reasons why the Parties are proposing the Settlement; and (v) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis). *See* 15 U.S.C. § 78u-4(a)(7).

With respect to the application for attorneys' fees and expenses, the case has been prosecuted on a contingency basis since 2017 and Lead Counsel has not received any payment of fees or expenses. Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. With respect to litigation expenses, Lead Counsel will apply for payment of Litigation Expenses incurred in connection with the institution, prosecution, and

resolution of the claims against the Defendants, in an amount not to exceed $450,000, which may include an application for the reasonable costs and expenses incurred by Lead Plaintiff directly related to its representation of the Class. The full details and basis for the fee and expense request will be detailed in Lead Counsel's motion which will be filed 35 days before the Settlement Hearing.

In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Claim Form to those members of the Class as may be identified through reasonable effort. For the purposes of identifying and providing notice to the Class, within ten (10) business days of the date of entry of the Preliminary Approval Order, FleetCor shall provide or cause to be provided to the Claims Administrator in electronic format a list of the holders of FleetCor common stock during the Class Period  The Claims Administrator will mail copies of the Notice and Claim Form (the "Notice Packet") to these identified shareholders. The Claims Administrator will also mail copies of the Notice Packet to brokers, banks, and other custodians and instruct them to either request from the Claims Administrator sufficient copies of the Notice Packet to forward to all beneficial owners for whom they purchased or otherwise acquired FleetCor common stock during the Class Period or provide a list of the names, mailing addresses, and, if available, email addresses, of such beneficial

owners to the Claims Administrator, in which event the Claims Administrator shall promptly mail or email the Notice Packet to the beneficial owners.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice and Summary Notice "concisely and clearly state, in plain, easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, and defenses; that a class member may enter an appearance through counsel if the member so desires; and the binding effect of a class judgment on class members." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *8 (S.D. Fla. May 14, 2007). The proposed notice plan set forth above, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Aranaz v. Catalyst Pharm. Partners Inc.*, 2014 WL 11870214, at *2-*3 (S.D. Fla. Dec. 3, 2014) (notice distributed by first class mail to all class members "who can be identified with reasonable effort . . . constitute[s] the best notice practicable under the circumstances; and constitute[s] due and sufficient notice to all persons and entities entitled thereto").

## C.    THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE

If the Court grants preliminary approval of the Settlement, Lead Plaintiff respectfully proposes the schedule set forth below for Settlement-related events.

| Event | Proposed Deadline |
|---|---|
| Deadline for mailing the Notice and Claim Form to potential Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 4(b)) | No later than 20 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 4(d)) | No later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 24) | 35 calendar days before the date set for the Settlement Hearing |
| Deadline for receipt of objections or requests for exclusion from the Class (Preliminary Approval Order ¶¶ 11, 15) | 21 calendar days before the date set for the Settlement Hearing |

| Deadline for filing reply papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 24) | 7 calendar days prior to the Settlement Hearing |
|---|---|
| Settlement Hearing (Preliminary Approval Order ¶ 2) | A date to be selected by the Court, 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Postmark deadline for Submitting Claim Forms (Preliminary Approval Order ¶ 8) | 120 calendar days after the Notice Date |

If the Court agrees with the proposed schedule, Lead Plaintiff requests that Court schedule the Settlement Hearing 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## V.   CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the Parties' agreed-upon proposed Preliminary Approval Order, attached to the Motion as Exhibit 3, which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

Dated: November 7, 2019       Respectfully submitted,

/s/ *Katherine M. Sinderson*
Salvatore J. Graziano (admitted *pro hac vice*)
Katherine M. Sinderson (admitted *pro hac vice*)
Scott R. Foglietta (admitted *pro hac vice*)
Julia K. Tebor (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554 1400
Fax: (212) 554 1444
Salvatore@blbglaw.com
Katiem@blbglaw.com
Scott.Foglietta@blbglaw.com
Julia.Tebor@blbglaw.com

*Counsel for Lead Plaintiff City of Sunrise*
*General Employees' Retirement Plan and Lead*
*Counsel for the Class*

H. Lamar Mixson
Georgia Bar No. 514012
Amanda Seals Bersinger
Georgia Bar No. 502720
**BONDURANT MIXSON &**
   **ELMORE, LLP**
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Tel: (404) 881-4100
Fax: (404) 881-4111
mixson@bmelaw.com
bersinger@bmelaw.com

*Liaison Counsel for Lead Plaintiff City of*
*Sunrise General Employees' Retirement Plan*

24

Stuart Kaufman (admitted *pro hac vice*)
**KLAUSNER, KAUFMAN, JENSEN AND LEVINSON**
7080 NW 4th Street
Plantation, Florida 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
stu@robertdklausner.com

*Additional Counsel for Lead Plaintiff City of Sunrise General Employees' Retirement Plan*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with 14 point Times New Roman, one of the font and point selections approved by the Court in Local Rule 5.1(C).

/s/ Katherine M. Sinderson
Katherine M. Sinderson

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2019, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ Katherine M. Sinderson
Katherine M. Sinderson